881 So.2d 870 (2003)
Shannon JENKINS a/k/a Slink, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00394-COA.
Court of Appeals of Mississippi.
December 2, 2003.
Rehearing Denied February 10, 2004.
*871 Shannon Jenkins, appellant, pro se.
Harvey Lee Morrison, Joseph Joshua Stevens, attorneys for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before KING, P.J., IRVING and GRIFFIS, JJ.
KING, P.J., for the Court.
¶ 1. Shannon Jenkins was convicted of escape by the Oktibbeha County Circuit Court. Jenkins was sentenced to a term *872 of five years in the custody of the Mississippi Department of Corrections, with this sentence to run consecutively to any prior sentence. Aggrieved, Jenkins has appealed and raised the following issues which we quote verbatim:
I. Whether or not the Indictment stated a cause of action under either Section 97-9-45 or Section 97-9-49.
II. Whether or not the Defendant was put to trial on a void indictment.
III. Whether or not the Defendant, upon conviction, should have been sentenced under Section 97-9-45, Section 97-9-49(1) or Section 97-9-49(2).
IV. Whether or not the court erred in the granting and refusing of certain instructions including the refusal to grant Defendant's Instructions D-10-A and D-11.
V. Whether the Defendant's right to a speedy trial was violated.
VI. Whether the Defendant could have been authorized to leave the jail premises by the jail personnel in charge of him on May 16, 1999.
VII. Trial court erred in sentencing Appellant to a five year term.
VIII. Appellant was denied his right to a speedy trial.
IX. Appellant was denied his right to be heard as provided by Mississippi Constitution Art. III Section 26.
¶ 2. Where these issues are interrelated, they will be combined and addressed as one.

FACTS
¶ 3. On February 4, 1994, Jenkins pled guilty to vehicular manslaughter and was sentenced to a term of ten years in the custody of the Mississippi Department of Corrections. Jenkins' sentence was suspended and he was placed on probation.
¶ 4. In April 1999, the State sought to revoke Jenkins' suspended sentence because he had been convicted of DUI and distribution of marijuana while on probation. On April 20, 1999, the trial judge entered an order revoking the suspended sentence.
¶ 5. Following the revocation of his probation, Jenkins was being held in the county jail awaiting transportation to the penitentiary to serve his sentence on the vehicular manslaughter conviction. On May 16, 1999, at 5:00 a.m. roll call, it was discovered that Jenkins was missing from the jail. In April of 2000, Jenkins was located in Texas, where he was taken into custody. In November 2000, he was returned to Oktibbeha County to stand trial on the charge of escape.
¶ 6. On September 17, 2001, Jenkins acting pro se, filed a motion for a speedy trial. However, this motion was not presented to the trial court until the day of trial, February 1, 2002. The trial court ruled that Jenkins' Sixth Amendment right to a speedy trial had not been violated.
¶ 7. On February 1, 2002, immediately prior to trial, Jenkins' attorney presented a motion to quash the indictment saying that it failed to allege that Jenkins had been sentenced to the Mississippi Department of Corrections, and that he had used force or violence to escape. The trial court determined that the indictment was sufficient as a matter of law and denied the motion. Upon the denial of that motion, Jenkins' attorney presented a motion which asked the trial court to determine which specific statute was relied upon as a basis for the indictment. This motion was also denied. Thereafter, the trial of this matter proceeded.
¶ 8. Chief Deputy George Carrithers testified that Jenkins was held in the new Oktibbeha County Jail pending the revocation hearing. He was made a trustee, but *873 only allowed to move within the jail itself. Carrithers testified that in March 1999, Jenkins, at the request of his stepfather, was moved from the new jail and housed in the old jail across the street. Carrithers indicated that trustees housed in the old jail were allowed greater freedom of movement than those trustees housed in the new jail. However, they were not allowed to leave the premises except for special purposes and then only when accompanied by a deputy for a "special detail." According to Carrithers, he explained these restrictions to Jenkins.
¶ 9. Jenkins testified that he was not supervised, was free to come and go as he pleased, and was only required to tell someone if he was going after dark. Jenkins indicated that on May 16, 1999, he informed the dispatcher that he was going to the store to get himself a Coke. Jenkins testified that after getting the Coke, he did not return to the jail, but kept going.
¶ 10. After a trial on February 1st and 4th, 2002, Jenkins was convicted of escape and sentenced to five years in the custody of the Mississippi Department of Corrections pursuant to Mississippi Code Annotated Section 97-9-45.

ISSUES AND ANALYSIS

I.

Was the indictment defective?
¶ 11. Jenkins contends that the trial court erred in allowing him to stand trial on an indictment which was void for failure to reference the specific statute upon which it was brought. Jenkins claims that either Mississippi Code Annotated Section 97-9-45 (Rev.2000)[1] or 97-9-49 (Rev.2000)[2] could have applicability to the facts in this matter.
*874 ¶ 12. Uniform Circuit and County Court Rule 7.06 sets forth the requirements of an effective indictment. It provides:
The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:
1. The name of the accused;
2. The date on which the indictment was filed in court;
3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
4. The county and judicial district in which the indictment is brought;
5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;
6. The signature of the foreman of the grand jury issuing it; and
7. The words "against the peace and dignity of the state."
The court on motion of the defendant may strike from the indictment any surplusage, including unnecessary allegations or aliases.
¶ 13. Uniform Circuit and County Court Rule 7.06 does not mandate that the indictment reference a particular section of the Mississippi Code. It does require that the defendant be informed of the nature of the charge and of the facts upon which it is based. The indictment stated:
THE GRAND JURORS of the State of Mississippi, taken from the body of the good and lawful men and women of said County, duly elected, empanelled, sworn and charged, at the Term aforesaid of the Court aforesaid, to inquire in and for the body of the County aforesaid, in the name and by the authority of the State of Mississippi, upon their oaths, present: that
SHANNON JENKINS alias SLINK
late of the County aforesaid, on or about the 16th day of May 1999, in the County aforesaid, did unlawfully, wilfully, and feloniously, escape from the custody of the Oktibbeha County Jail wherein he had been confined by virtue of a conviction for the crime of Vehicular Manslaughter; a felony, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Mississippi;
¶ 14. The indictment charged that Jenkins (1) unlawfully, wilfully and feloniously escaped from the custody of the Oktibbeha County Jail (2) where he had been confined by virtue of a conviction for the felony of vehicular manslaughter.
¶ 15. Under Mississippi Code Annotated Section 97-9-45, the State was required to prove: (1) that Jenkins was sentenced to the Mississippi Department of Corrections for any term; (2) that Jenkins escaped or attempted to escape from his particular unit or camp of confinement or the boundaries of the penitentiary; or (3) that Jenkins escaped or attempted to escape before confinement.
¶ 16. The State offered proof that (1) Jenkins had been convicted of vehicular homicide and sentenced to the custody of *875 the Mississippi Department of Corrections, (2) pending transportation to Parchman, he was housed at the Oktibbeha County Jail, and (3) that he escaped from the jail.
¶ 17. Jenkins was adequately informed by the indictment of the nature of the charge against him and the supporting facts.
¶ 18. We find this issue to be without merit.

II.

Whether Defendant's Instructions D-10-A and D-11 were improperly refused.
¶ 19. Jenkins contends that the trial court erred by granting jury instructions C-30[3] and D-3[4] and refusing his D-10-A[5] and D-11[6] jury instructions. D-3 was an instruction requested by Jenkins. A trial court will not normally be found in error for having given a defendant his requested instruction. Brown v. State, 768 So.2d 312(¶ 9) (Miss.Ct.App.1999).
¶ 20. A defendant is entitled to instructions which fairly state the law, are supported by the evidence and are not unnecessarily duplicative. Id.
¶ 21. Instructions D-10-A and D-11 were overly broad, and not fully supported by the evidence. However, those portions of D-10-A and D-11 which were correct statements of law and supported *876 by the evidence were placed before the jury in instructions C-30 and D-3.
¶ 22. Accordingly, this Court finds no merit in this issue.

III.

Was Jenkins denied a speedy trial?
¶ 23. Jenkins alleges a violation of both his statutory and constitutional rights to a speedy trial. For constitutional purposes, the right to a speedy trial attaches at arrest. Scott v. State, 829 So.2d 688(¶ 6) (Miss.Ct.App.2002). Under Mississippi statutory law, absent good cause, a defendant is to be brought to trial 270 days from the date of arraignment. Id.
¶ 24. Claims of speedy trial violations are considered within the context of Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Barker factors are: length of the delay, reason for the delay, defendant's timely assertion of his right to a speedy trial, and resulting prejudice to the defendant.
¶ 25. The trial court conducted a thorough analysis of Jenkins' speedy trial issues. In overruling Jenkins' motion to dismiss for lack of speedy trial, the trial court stated:
The Defendant escaped from custody and fled the jurisdiction of this Court on or about May 16, 1999. He was apprehended in Texas approximately one year later on a possession of marijuana charge for which he received a six-month sentence. The State of Mississippi began extradition paperwork in May 2000, and the Defendant was returned to this Court's jurisdiction in November 2000. The Defendant was charged with the crime of escape and served a copy of his indictment on January 30, 2001. He was arraigned on February 2, 2001, and his case was set for trial April 26, 2001. On April 25, 2001, the Defendant's attorney obtained a continuance of the trial date to July 25, 2001 so that he could have more time to investigate. On July 23, 2001, the Defense attorney had the trial date continued to a later date in the same term, July 31, 2001, that trial date was then continued by the Defendant to later in the same term to August 2, 2001. Then on August 1, 2001, the trial date was continued by the Defendant to October 31, 2001 due to the listed reason of "further negotiation." The Defendant filed his pro se Motion for Speedy Trial on September 17, 2001. The Court on October 29, 2001 started a complex product liability suit involving a multinational car manufacturer (Velma Ruth Seavy v. Mazda); this case took a total of two weeks, and the Oktibbeha term had to be extended an extra week to finish the case. The case ended Friday, and the next Monday the Court went straight to a four-week term of court in Lowndes County. Due to these circumstances, the case was forced to be continued until the next regular Oktibbeha term on February 1, 2002 on which date it did actually go to trial. A concise timeline of these events follows:

Pled guilty to vehicular manslaughter 02/04/1994
Sentenced to ten years suspended, five years supervised probation 04/18/1994
Sentence revoked, sentenced to ten years to serve 04/20/1999
Escaped from custody 05/16/1999
Indicted on escape charge 07/22/1999
Arrested in Texas, six months to serve 04/23/2000
Transported back to Mississippi 11/15/2000
Served with indictment 01/30/2001
Arraigned 02/02/2001
Set for trial 04/25/2001
Defense continuance 04/25/2001
Trial Reset for 07/25/2001
Defense continuance 07/23/2001
Trial Reset for 07/31/2001
Defense continuance 07/30/2001

*877
Trial Reset for 08/02/2001
Defense continuance 08/01/2001
Trial Reset for 10/31/2001
Motion for Speedy Trial filed 09/17/2001
Continuance due to Civil Trial 11/06/2001
Trial Reset for 02/01/2002

¶ 26. The trial judge found that 991 days elapsed between Jenkins' escape from the Oktibbeha County Jail and his being brought to trial for the offense of escape. Of that 991 days, the trial court determined that 899 days of delay were attributable to Jenkins, the remaining 92 days were attributable to the court's participation in a prior trial setting.
¶ 27. The trial court also determined that Jenkins had asserted his right to a speedy trial by filing his pro se motion for a speedy trial on September 17, 2001. It therefore weighed that factor in Jenkins' favor. The court determined that the factor of resulting prejudice to Jenkins was ultimately dispositive in that Jenkins suffered no prejudice as a result of this delay. At the time of his escape, Jenkins was incarcerated and serving a sentence for vehicular manslaughter.
¶ 28. Based on these findings, the trial court appropriately overruled the motion to dismiss for lack of a speedy trial.

IV.

Was Jenkins' right to be heard pursuant to Mississippi Constitution Art. III, Section 26 denied?
¶ 29. Jenkins alleges that the trial court deprived him of his right to be heard pursuant to the Mississippi Constitution Article 3, Section 26 at the hearing on the motion for a new trial. This section of the Mississippi Constitution provides that an accused shall have a right to be heard by himself or counsel, or both in a criminal prosecution. He asserts that he should have been present and a part of the hearing because there were issues that he wanted to present such as the speedy trial matter and perjury involving the testimony of the sheriff and deputy sheriff. Jenkins was present and represented by counsel who presented the motion to the trial court.
¶ 30. The record does not indicate any expression by Jenkins of a desire to testify or make additional comments to the trial court. The court addressed Jenkins immediately before the close of the hearing and advised him of his right to appeal. When the court addressed him, he gave no indication of any desire to say or add anything to the hearing.
¶ 31. An appellate court may only review those matters properly preserved for appeal during trial. Sanchez v. State, 792 So.2d 286(¶ 18) (Miss.Ct.App.2001). The record does not reflect that this was done. Under traditional appellate procedure, any error not first brought to the attention of the trial court is not preserved for appeal and is thereby waived. Bishop v. State, 771 So.2d 397(¶ 14) (Miss.Ct.App.2000).
¶ 32. THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT OF CONVICTION OF FELONY ESCAPE AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS TO RUN CONSECUTIVELY TO ANY OTHER SENTENCES IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*878 McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] Mississippi Code Annotated Section 97-9-45 (Rev.2000) provides: Escapees; penalties and forfeiture of parole time.

If any person sentenced to the Mississippi Department of Corrections for any term shall escape or attempt to escape from his particular unit or camp of confinement or the boundaries of the penitentiary as a whole, or shall escape or attempt to escape from custody before confinement therein, he shall, upon conviction, be punished by imprisonment in such prison for a term not exceeding five (5) years, to commence from and after the expiration of the original term of his imprisonment as extended in consequence of such escape or attempted escape.
Any convict who is entrusted to leave the boundaries of confinement by authorities of the Mississippi Department of Corrections or by the governor, and who wilfully fails to return within the stipulated time, or after the accomplishment of the purpose for which he was entrusted to leave, shall be considered an escapee and subject to prosecution under this section.
[2] Mississippi Code Annotated Section 97-9-49 (Rev.2000) provides: Escape of prisoners or persons under arrest or custody; penalties; wilful failure to return to jail by person entrusted to leave.

(1) Whoever escapes or attempts by force or violence to escape from any jail in which he is confined, or from any custody under or by virtue of any process issued under the laws of the state of Mississippi by any court or judge, or from the custody of a sheriff or other peace officer pursuant to lawful arrest, shall, upon conviction, if the confinement or custody is by virtue of an arrest on a charge of felony, or conviction of a felony, be punished by imprisonment in the penitentiary not exceeding five (5) years to commence at the expiration of his former sentence, or, if the confinement or custody is by virtue of an arrest of or charge for or conviction of a misdemeanor, be punished by imprisonment in the county jail not exceeding one (1) year to commence at the expiration of the sentence which the court has imposed or which may be imposed for the crime for which he is charged.
(2) Anyone confined in any jail who is entrusted by any authorized person to leave the jail for any purpose and who wilfully fails to return to the jail within the stipulated time, or after the accomplishment of the purpose for which he was entrusted to leave, shall be considered an escapee and may be punished by the addition of not exceeding six (6) months to his original sentence.
[3] Instruction C-30: The Court instructs the jury that Shannon Jenkins has been charged with the offense of escape from custody.

If you find from the evidence in this case beyond a reasonable doubt that Shannon Jenkins, on or about May 16, 1999 in Oktibbeha County escaped from the Oktibbeha County Jail by leaving the premises without permission, then you shall find the Defendant guilty of escape. The form of your verdict shall be:
"We, the Jury, find the Defendant, Shannon Jenkins, guilty of the crime of escape"
If, however, you find from the evidence presented in this case, beyond a reasonable doubt, that Shannon Jenkins, on or about May 16, 1999 in Oktibbeha County, had authorization to leave the Oktibbeha County Jail premises up until 10 o'clock p.m., and in fact, did so leave said jail premises and failed to return, then you shall find him guilty of escape by breach of entrustment. The form of your verdict shall be:
"We, the Jury, find the Defendant, Shannon Jenkins, guilty of the crime of escape by breach of entrustment."
If, however, you find from the evidence presented that the prosecution has failed to prove any one or more elements of the crimes of escape or escape by breach of entrustment, beyond a reasonable doubt, then you shall find Shannon Jenkins not guilty. The form of your verdict shall be:
"We, the Jury, find the Defendant, Shannon Jenkins, not guilty."
[4] Instruction D-3: The Court instructs the Jury that if you believe that Shannon Jenkins left the Oktibbeha County Jail premises on or about May 16, 1999 without resorting to force and violence and that on said date and occasion he had been designated as a trustee and had authorization to leave the jail premises during May 16, 1999 up until 10 o'clock P.M. and in fact did so leave said jail premises and failed to return, then you shall find him guilty of escape by breach of entrustment.
[5] Instruction D-10-A: The Court instructs the Jury that permission or authorization by officers for Defendant Shannon Jenkins to leave the Oktibbeha County Jail premises may be inferred from a course of conduct or by standard operating procedure in effect on May 16, 1999. In addition, any deputy sheriff, jailer or other employee of the sheriff's department supervising the prisoners had authority to grant permission or authorization to Shannon Jenkins to go off the jail premises prior to 10 o'clock p.m. on May 16, 1999.
[6] Instruction D-11: The Court instructs the jury that a Jailer, Deputy Sheriff, or Dispatcher, charged by the Sheriff with the responsibility of handling jail inmates, had the authority to authorize Shannon Jenkins to go off the jail premises prior to 10 o'clock p.m. on May 16, 1999.